582 A.2d 590

**Yeshi E. IMAGNU**

v.

**Mulugeta M. WODAJO.**

**No. 283, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Dec. 4, 1990.

---

210

Marcia K. Docter (Docter & Docter, P.C., on brief), Washington, D.C., for appellant.

Philip J. Santa Maria (Santa Maria and Associates, Chtd., on brief), Gaithersburg, for appellee.

Argued before BLOOM, WENNER and FISCHER, JJ.

BLOOM, Judge.

The Circuit Court for Montgomery County granted Yeshi E. Imagnu (wife) an absolute divorce from Mulugeta M. Wodajo (husband).  Both parties were dissatisfied with the monetary award granted to the wife:  the wife asserts that the chancellor erred or abused his discretion in evaluating the husband's pension, which was a major item of marital property;  the husband complains that the court abused its discretion in granting a monetary award that amounted to an equal division of marital property.

We agree with the wife's contention and will vacate that part of the judgment of divorce granting her a monetary award.

### Facts

The parties were married on 5 May 1964, in Addis Ababa, Ethiopia.  The husband moved to the United States in 1974 and was joined shortly thereafter by his wife and their children.  Throughout the marriage, the wife was responsible for managing the household and caring for the personal needs of the husband and their two children, while the husband provided the financial support.  At the time of the divorce proceeding, both children were emancipated.  On or about 1 August 1983, the parties separated and lived apart continuously until 15 November 1989, at which time the trial court, having determined that the husband was responsible for the estrangement of the parties, granted the wife an absolute divorce.  Pursuant to Md.Code (1984), Fam. Law Art. §§ 8–203 and 8–204, the court found the marital property to consist of the marital home in Bethesda, Mary-

land, valued at $265,000; the jointly owned furniture, valued at $2,500; and the husband's pension from the World Bank.[1]

In valuing the husband's pension, the chancellor chose to assign a value equal to the husband's contributions to the pension plus interest thereon to the date of the divorce. Thus computed, the pension was assigned a value of $122,-936.87. The chancellor rejected, as speculative and inequitable, the testimony of the wife's expert witness, an economist, who opined that the present value of the husband's pension benefits was $429,131. The wife was awarded alimony of $1,200 per month for six years and attorney's fees of $10,500. The court ordered that the jointly owned home and furniture be sold and the proceeds divided equally between the parties. Finally, the wife was granted a monetary award of $61,468.44, amounting to one-half of the amount at which the husband's pension was valued.

## I

There is, of course, no dispute as to whether pensions or retirement benefits that accrue during a marriage constitute marital property under Md.Code (1984), Fam. Law Art. § 8–201(e). That they are is well established. *Deering v. Deering*, 292 Md. 115, 437 A.2d 883 (1981); *Gravenstine v. Gravenstine*, 58 Md.App. 158, 168, 472 A.2d 1001 (1984). It is the method adopted by the chancellor to value that property which is being challenged.

In *Ohm v. Ohm*, 49 Md.App. 392, 405–06, 431 A.2d 1371 (1981), we recognized that

the problem of valuing and distributing pension benefits to be paid in the future is a difficult one and has not proved susceptible to the imposition of rigid rules. Rath-

---

1. Appellee has been employed by the World Bank since October, 1974, and has attained the position of Senior Educator. At the time of trial, appellee was 55 years of age and eligible for immediate retirement. He is not required to retire at this time, however, and may continue to work until age 62.

er, the courts have generally held that a flexible approach is necessary, so as to accommodate the circumstances presented by each individual case.

The Court of Appeals, in *Deering v. Deering, supra,* after noting the difficulty inherent in valuing a pension and considering the need for flexibility in this process, stated:

It is thus apparent that an elastic approach to this problem is required, . . ., and it is equally clear that [Md.Code (1984), Fam. Law Art. § 8–205] provides the chancellor in this State with the necessary flexibility to fairly devise a marital property adjustment. Although the law commands the trial court both to "determine which property is marital property," if its division is an issue, and to "determine the value of all [such] marital property," the enactment further provides that, "after making the [required] determination, the court *may* grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property . . ." . . . . Moreover, the amount, if any, of the monetary award and its method of payment is to be fixed by the trial court after its evaluation of several enumerated considerations, including "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award."

292 Md. at 129–30, 437 A.2d 883.

The Court in *Deering* then addressed the alternatives available to trial courts in allocating retirement benefits between the parties and approved the approach taken by the Wisconsin Supreme Court in *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978). *Bloomer* discussed three methods of pension valuation. The first method is to place a value on the pension equal to the employee's contributions to it plus accrued interest thereon. The second method requires an assessment of the present value of the future benefits expected to be received by the employee after he retires. That method involves some degree of actuarial speculation. Benefits payable in the future must be discounted for future accrual of interest, with considera-

ble uncertainty as to future interest rates. Whether the employee will ever actually receive retirement benefits depends upon his survival to retirement age. Subject to such guarantees as are afforded under ERISA,[2] the eventual receipt of pension benefits may depend upon the solvency of the employer and on the continued existence of the pension plan at the time the employee reaches retirement age. Assuming that the employee continues to work until he retires and the fund is solvent, how much he eventually will receive in benefits will depend upon how long he survives after retiring. The value of what he does receive will be affected by inflationary factors impossible to predict with any degree of certainty. Nevertheless, a present value can be placed upon a contingent future annuity, based upon statistical data and actuarial experience. The third method discussed in *Bloomer* and *Deering* involves the determination of a fixed percentage for the nonemployee-spouse of any future retirement payments received by the employee-spouse, payable "as, if, and when" received. *Bloomer*, 84 Wis.2d at 135, 136, 267 N.W.2d 235; *Deering*, 292 Md. at 130–31, 437 A.2d 883. Adoption of that method does not eliminate the need to assign a value to the pension, Fam. Law Art., § 8–204, but as a practical matter it nullifies any risk of error in the evaluation.

The Court of Appeals, in *Deering*, concluded that any one of those three methods

> may be the proper one for the trial courts of this State to take. And whether any particular option represents an appropriate exercise of discretion depends, of necessity, upon the circumstances of the individual case. In this regard, we point out that [Md.Code (1984), Fam.Law Art. § 8–205] does not require an equal division of marital property, nor does it contemplate a decretal award which

---

**2.** The Employee Retirement Income Security Act, Title 29 U.S.C., Chapter 18, particularly Subchapter III, §§ 1301–1399.

is so harsh as to force a wage earner spouse to liquidate his or her pension interest in order to satisfy it.

292 Md. at 131, 437 A.2d 883.

In *Grant v. Zich,* 53 Md.App. 610, 456 A.2d 75 (1983), *aff'd,* 300 Md. 256, 477 A.2d 1163 (1984), we relied on *Ohm v. Ohm, supra,* and *Deering,* in holding that the chancellor did not abuse his discretion in measuring the extent of pension benefits accrued during the marriage in accordance with the value of the husband's contributions to the fund during that period. Further, we found no error in the chancellor's failure to consider other methods of valuation or in his decision to award the wife a portion of the contributions payable *without interest* when the husband retired. 53 Md.App. at 619–20, 456 A.2d 75. The chancellor's decision to employ the contributions method was justified in that the only evidence as to the value of the pension that was before the court related to the husband's contributions. We refused to require the chancellor to consider other methods of valuation, for which no evidence was presented, and noted that

> the three approaches outlined in *Deering* were not intended to be mandatory rules or inflexible formulae. Rather, they were presented as examples. As the court said, "any of the just articulated approaches may represent the proper one for the trial courts of this State to take...." 292 Md. at 131, 437 A.2d at 892. This language does not require a chancellor to follow precisely any method of evaluation nor does it preclude him from adopting some other method.

53 Md.App. at 620, 456 A.2d 75.

The principles outlined in *Grant* and *Deering* have long been accepted by the Court of Appeals and this Court. Both courts have consistently shown great respect for the judgments of trial courts in choosing methods for valuing pension benefits in divorce proceedings. *See Lookingbill v. Lookingbill,* 301 Md. 283, 483 A.2d 1 (1984); *Williams v. Williams,* 71 Md.App. 22, 523 A.2d 1025 (1987); *Rosenberg v. Rosenberg,* 64 Md.App. 487, 497 A.2d 485, *cert. denied,*

305 Md. 107, 501 A.2d 845 (1985); *Harman v. Harman,* 61 Md.App. 554, 487 A.2d 689 (1985); *Nisos v. Nisos,* 60 Md.App. 368, 483 A.2d 97 (1984); *Bangs v. Bangs,* 59 Md.App. 350, 475 A.2d 1214 (1984); *Barr v. Barr,* 58 Md.App. 569, 473 A.2d 1300 (1984); *Cotter v. Cotter,* 58 Md.App. 529, 473 A.2d 970 (1984). Heretofore, neither this Court nor the Court of Appeals has ever required a trial court to utilize a particular method of pension valuation.

In *Cotter v. Cotter, supra,* the husband challenged the use of the present value method, arguing that the "as, if, and when" method was more equitable. Rejecting his argument for reversal, we stated:

> [t]he fact that an award of a percentage of pension payments 'if, as and when received' is an available method for distributing retirement benefits as marital property (one which will prevent, eliminate or minimize certain types of inequities) does not mandate the adoption of that method in any case. As *Deering, Ohm* and *Grant* make clear, the chancellor has broad discretion not only with respect to evaluating pensions or retirement benefits as marital property but also in the manner of distributing them.

58 Md.App. at 540–41, 473 A.2d 970. Further, in *Harman v. Harman,* 61 Md.App. at 567, 487 A.2d 689, we held that although the evidence submitted to the chancellor supported the use of the "contribution, plus interest," method, the chancellor was not required to adopt that method but was free, in the exercise of his discretion, to select the present value method.

Significantly, in *Barr v. Barr, supra,* we specifically refused to depart from *Grant v. Zich, supra,* and rejected the argument that a chancellor should not be given the discretion to consider an evaluation of a retirement benefit based upon the employee's contribution. Responding to the suggestion that we overrule *Grant,* we stated, "Not only are we not inclined to do so, but also we have no such authority." 58 Md.App. at 590, 473 A.2d 1300. We noted that in *Deering, supra,* the Court of Appeals ap-

proved the three methods discussed in *Bloomer, supra,* as appropriate methods of determining the value of a pension for purposes of the Property Disposition in Divorce and Annulment Act, Md.Code (1984) Fam. Law Art., subtitle 2. We reaffirm today the validity of those three methods and acknowledge that our scope of review of a trial court's selection of a particular method is limited to whether that selection in a particular case is clearly erroneous or constitutes an abuse of discretion. Since we found no abuse of discretion in *Barr,* in view of the evidence before the chancellor that the husband could not retire immediately and that the testimony on valuation disputed the wife's present value determination, we held that we were without authority to circumscribe the options given to the trial courts by the Court of Appeals. *Id.* at 591, 473 A.2d 1300.

In the case *sub judice,* however, we believe that the chancellor should not have adopted the contributions plus interest method to determine the value of the husband's pension. We emphasize, however, that, ordinarily, the contributions plus interest method is, as we and the Court of Appeals have repeatedly held, an appropriate method of valuing a pension. With respect to a pension that has not vested, the chancellor may view the present value method as too speculative, particularly if, as in this case, there is some indication from family history that the employee's life expectancy may be less than the statistical average for men of his age. The court may reasonably reject the "if, as, and when" method of apportionment for a variety of reasons. The employee's spouse, for example, may have immediate need for funds; his or her health may be such as to raise some doubt as to his or her eventual sharing in the employee's retirement; the court may have reason to doubt that an "if, as, and when" award could be enforced effectively at some time in the future.

The advantage of adopting the method of valuing a pension in accordance with the employee's contribution to it is the avoidance of uncertainty. If the employee were to terminate his employment as of the date of the divorce, he

would ordinarily be entitled to an amount equal to his contribution to the fund, plus interest accrued thereon. Therefore, without speculating about the future, the chancellor can be certain that the present value of the employee's pension is at least equal to his contributions plus interest because that is the amount the employee-spouse could withdraw as of the time of evaluation.

In the present case, the chancellor considered the three valuation methods discussed in *Deering, supra.* He stated:

The Court declines to utilize the first method as set forth by Dr. Borzilleri, present value discount, because the Court feels that it involves considerable uncertainty. The amount of the yield changes as different assumptions are used, with respect to the mortality, the turnover of the job, how long he stays there, the interest that is decided on and so forth.

In this case, as I have indicated earlier, the defendant is considerably older than the plaintiff. He is not in the best of health, and, as the testimony indicated, his family history is not one that would give one great comfort in any longevity. As a result, the court feels that it would be inequitable to use that method in valuing the pension.

The second method is, in the court's view, a normally equitable method. However, in this case, there are a couple of factors which mitigate against its use.

The first is that the court is satisfied after having studied the letter from counsel from the World Bank and its own knowledge, is satisfied that the Bank is not subject to a qualified domestic relations order, and that no assignment of the benefits can be made. Thus, there would be no assurance that, were the court to order this method of dividing the pension, that the plaintiff would ever receive anything.

Further, the court has indicated the issue of longevity in this matter, and I think that is a matter of some concern also for the plaintiff in this case as to the defendant.

That leaves the third method. The court is satisfied that, in this particular case, the third method of evaluating the defendant's pension rights, that is, by the amount of the contributions that have been made during the marriage, is the appropriate method.

The wife argues that the employee contribution plus accrued interest thereon method of evaluation of a pension should not be used because (1) it ignores the employer's contributions to the pension fund, which add real value to the property and (2) since *Bloomer* there has developed much more sophistication in determining the present value of future pension benefits. *See Laing v. Laing,* 741 P.2d 649, 656 n. 9 (Alaska 1987). As noted by the Wisconsin Supreme Court in *Holbrook v. Holbrook,* 103 Wis.2d 327, 340, 309 N.W.2d 343 (1981), "[T]his is true of valuation of any asset." While there is much to be said for preferring another method of evaluation or apportionment in most cases, we may not go so far as to preclude entirely the use of an evaluation method that has been approved by the Court of Appeals.

We are persuaded, however, that the use of that method was inappropriate in the case *sub judice.* It ignored the fact that the husband's pension was already vested and was, at the time of the divorce, clearly, definitely, and without any need to speculate as to the future, worth far more than the amount of his contributions plus interest. As noted *supra,* the husband was 55 years of age and thus eligible to retire at the time of divorce. Article 4, ¶ 4.7(a) of the Staff Retirement Plan of the International Bank for Reconstruction and Development allows the husband, upon retirement, to commute up to one-third of his pension into a lump sum. Utilizing the appropriate formula provided in the plan, the value of one-third of the husband's pension, as of the date of the divorce, was approximately $119,344.74.[3]

---

3. Table 4 of Schedule C of the Retirement plan provides that the husband is entitled to a lump sum payment of $1,463.76 for each $10.00 of monthly pension benefits commuted. Had he opted to

Accepting this figure as representative of one-third of the husband's pension leads to the conclusion that the full value of the pension is at least $358,034.22.

■ Just as the court was not obligated to accept the present value estimate of the pension offered by the wife, the court is not obligated to accept the commutation method for valuing the pension, as set out in the Bank's Retirement Plan. The evaluation of the pension at $122,936.87, however, because it so obviously underestimates its value (being roughly equivalent to the employer's conservative valuation of one-third of the pension), was clearly erroneous, and the adoption of that method of evaluation of this pension constituted an abuse of discretion.[4]

---

retire at age 55, his monthly pension would have been $2,446. One-third of that is $815.33. Thus, the formula for computing one-third of the husband's pension is $1,463.76 X 81.533, or $119,344.74.

Were he to choose to retire immediately and claim this lump sum, the husband would thereafter receive a pension of approximately $19,568.00 per year. Alternatively, if he were to choose to retire and forego the commutation, he would receive approximately $29,352.00 per year.

4. Some of the confusion as to the method by which appellee's pension should be valued may have resulted from the trial court's apparent belief that the three methods discussed in *Bloomer v. Bloomer, supra,* and *Deering v. Deering, supra,* are the only methods available for such valuations. As we stated in *Grant v. Zich,* 53 Md.App. 610, 620, 456 A.2d 75 (1983), *aff'd,* 300 Md. 256, 477 A.2d 1163 (1984), the three approaches outlined in *Bloomer* and *Deering,* "were not intended to be mandatory rules ..." but "... were presented as examples." There may certainly be other methods for determining the value of pension benefits, which will depend for their propriety on the facts and circumstances of the case. Indeed, the Wisconsin Supreme Court revisited *Bloomer* in *Mausing v. Mausing,* 146 Wis.2d 92, 97, 429 N.W.2d 768 (1988), and explained that, "[t]he three options suggested in *Bloomer* are nonexclusive, alternative means to a single purpose—establishing a means of dividing the asset fairly."

If the chancellor believes that an evaluation of the husband's pension based either upon the wife's expert's opinion or the employer's commutation calculations may be unfair to the husband because his life expectancy may be less than the statistical average of men of his age, any perceived inequity arising from the evaluation can certainly be corrected in the monetary award. Regardless of the evaluation, the monetary award need only achieve equity between the parties, not necessarily an equal distribution of marital property.

## II

The husband contends in his cross-appeal that the trial court abused its discretion in granting the wife a monetary award based upon an equal division of his pension and the family home, since the parties were separated for six years, during which time appellee made all payments on the family home and expended substantial sums toward the education of the children, without contribution from appellant. Specifically, he argues that the trial court failed to consider these and other factors required by Md.Code (1984) Fam.Law Art. § 8–205(b), when it granted the monetary award. Since we are setting aside the monetary award as being predicated, at least in part, on the erroneous value the court has assigned to the husband's pension, we need not address that contention directly.

We feel obligated to note, however, that the husband's cross-appeal raises an important issue that has come before this Court on numerous occasions but that nevertheless deserves some discussion. In *Bangs v. Bangs*, 59 Md.App. 350, 370, 475 A.2d 1214 (1984), we stated that "A chancellor is not required to articulate every step in his thought processes. A judge is presumed to know the law and to properly apply it. That presumption is not rebutted by mere silence." (Citation omitted.) We later held, in *Randolph v. Randolph*, 67 Md.App. 577, 508 A.2d 996 (1986), that in making a monetary award, the chancellor need not enunciate every factor he considered on the record, but must at least state on the record that he considered the required factors in making his decision. *Id.* at 585, 508 A.2d 996.

The chancellor in the case *sub judice* meticulously outlined on the record his consideration of each of the factors that contributed to his decision to grant the wife alimony. There is substantial similarity between the list of factors to be considered in granting a monetary award (§ 8–205(b)) and the list of factors to be considered in determining the amount and duration of alimony (§ 11–106(b)). The husband does not dispute that the chancellor complied with

§ 11–106(b) in his decision to award alimony. After awarding alimony, however, the chancellor determined the value of the marital property and granted a monetary award, stating:

> In reaching this award, the court has taken into consideration and into account the husband's contribution to the education expenses of the children, which, in this case, were substantial; his contribution to the mortgage and the upkeep of the residence in support of the children, and also his contribution to the break-up of this marriage.

The court then proceeded to grant a monetary award that had the effect of dividing the marital property equally between the parties. The husband argues that the chancellor's failure to articulate his consideration of the § 8–205(b) factors, despite the fact that they substantially mirror those factors listed in § 11–106(b), constitutes an abuse of discretion.

■ We have recognized that alimony and monetary awards are so interrelated that the decision to award one or both may be made only after a consideration of them in their mutual context. *Campolattaro v. Campolattaro*, 66 Md.App. 68, 502 A.2d 1068 (1986). While the wife is correct in stating that the court was not required to repeat its lengthy analysis of the § 11–106(b) factors, when making the monetary award under § 8–205(b), the record is ambiguous in that the court did not articulate, when granting the monetary award, that it had considered everything required by § 8–205(b). Upon remand, the court will have the opportunity to articulate more clearly the basis for its decision to grant a monetary award, should it choose to do so. We reiterate, reevaluation of the pension as a marital asset will not require an equal division of it if the chancellor deems that an equal division of an asset worth considerably more than he originally valued it would not be equitable.

■ The husband further argues, relying on *Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599 (1982), that since he paid the mortgage, taxes, and other carrying charges on the

parties' jointly owned property, he is entitled to contribution from appellant. The right of a co-tenant to contribution for such payments is well established. *Crawford, supra; Aiello v. Aiello,* 268 Md. 513, 302 A.2d 189 (1973); *Colburn v. Colburn,* 265 Md. 468, 290 A.2d 480 (1972); *Pino v. Clay,* 251 Md. 454, 248 A.2d 101 (1968); *Schilbach v. Schilbach,* 171 Md. 405, 189 A. 432 (1937); *Hogan v. McMahon,* 115 Md. 195, 80 A. 695 (1911). In *Schilbach, supra,* 171 Md. at 408, 189 A. 432, the Court of Appeals recognized that the right to contribution applies to tenants by the entireties. We have repeatedly held, however, that a chancellor is not obligated to award such contribution between husband and wife at the time of a divorce. *See Kline v. Kline,* 85 Md.App. 28, 581 A.2d 1300 (1990); *Broseus v. Broseus,* 82 Md.App. 183, 570 A.2d 874 (1990); *Wassif v. Wassif,* 77 Md.App. 750, 551 A.2d 935, *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989); *Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833, *cert. granted,* 313 Md. 572, 546 A.2d 490 (1988); *Spessard v. Spessard,* 64 Md.App. 83, 494 A.2d 701 (1985). We stated in *Kline, supra,* that

> The reason contribution is not mandatory between spouses at time of divorce is that contribution is an equitable principle, as pointed out in *Hogan v. McMahon, supra,* and the ability to grant a monetary award under the Act enables the chancellor to achieve a more complete equity than can be done through a *Crawford* contribution.

While the trial court is not precluded from ordering contribution, "[d]epending on the circumstances, requiring contribution could create the very inequity which the Act was designed to prevent." *Spessard v. Spessard, supra,* 64 Md.App. at 96, 494 A.2d 701. In the case *sub judice,* we have reviewed the record and we perceive no abuse of discretion in the denial of appellee's request for contribution.

## Conclusion

While the contributions plus interest method is generally an appropriate method for valuing pension benefits, its use

under the facts and circumstances of this case erroneously underestimated the value of appellee's pension. Consequently, we must vacate that portion of the judgment of divorce granting a monetary award and remand for reconsideration in the light of this opinion.

JUDGMENT VACATED AS TO MONETARY AWARD AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT, MULUGETA M. WODAJO.