Maria E. De LIEDEKERKE,
Appellant/Cross–Appellee,

v.

Patrick E. De LIEDEKERKE,
Appellee/Cross–Appellant.

Nos. 92–FM–444, 92–FM–614.

District of Columbia Court of Appeals.

Argued Nov. 12, 1993.

Decided Dec. 20, 1993.

Diane M. Smith, with whom Robert P. Kaufman, Washington, D.C., was on the brief, for appellant/cross-appellee.

Armin U. Kuder, with whom Theresa M. Mihalik, Washington, D.C., was on the brief, for appellee/cross-appellant.

Before STEADMAN and SULLIVAN, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

This is an appeal from property division aspects of a trial court judgment of divorce. Both parties are citizens of Belgium and were married in Belgium one week after the execution of a premarital agreement governing their respective property rights. The parties are both current employees of the World Bank entitled to pension benefits on death or on retirement or resignation from the bank.

The parties raise two principal issues on appeal. The first is whether the trial court permissibly applied the "when, as, and if" principle to the treatment of the parties' respective interests in the World Bank pension plan. The second is whether the trial court properly divided the parties' marital home in the District under D.C.Code § 16–910(b) (1989) rather than under the premarital agreement, granting the husband seventy-five percent and the wife twenty-five percent. We affirm.[1]

## I.

The trial court applied the provisions of the premarital agreement in determining that each party had a fifty percent interest in

---

[1]. A third issue raised on appeal is whether the trial court properly denied an award of attorney's fees to the wife. We find no abuse of discretion in this regard. "[I]t would require an extremely strong showing to convince the court that an award is so arbitrary as to constitute an abuse of discretion." *Rachal v. Rachal,* 489 A.2d 476, 478 (D.C.1985). Unlike in *Tydings v. Tyd-* *ings,* 567 A.2d 886, 888 (D.C.1989), the trial court in this case found that the proceedings were not burdensome or oppressive. The trial court further had found that both parties had substantial assets prior to the distribution. *Tydings* does not compel the trial court to consider attorney's fees entirely apart from the property distribution. *Id.* at 890–91.

the pension plan payments of the other under the World Bank pension plan. Neither party contests this ruling. The only issue is whether the trial court properly refused to make a determination of the present worth of each party's interest in the pension plan and to require a cash settlement based upon such present net worth.

Neither party has yet retired from the Bank, and there was considerable disagreement as to the age at which the parties would in fact retire and begin to receive their pension benefits and as to the physical conditions of the parties that might affect normal life expectancies. The trial court determined that instead of attempting to estimate the present value of each party's interest in the plan it would instead apply the "when, as, and if" method. Such a treatment means that the pension payments are divided when, as, and if they are in fact paid out by the employer. This court expressly approved the "when, as, and if" method in *Barbour v. Barbour*, 464 A.2d 915, 920 n. 6 (D.C.1983) (approving trial court ruling that "a fixed percentage of any future benefits received under appellant's pension should be paid to appellee"). In a divorce proceeding the trial court has discretion over the method by which the division of property will be effectuated. *See id.* (noting that other methods of valuation and apportionment may be appropriate).

■ The appellant wife, however, asserts that the trial court abused its discretion in making such a determination because of the unenforceability of a qualified domestic relations order against the World Bank. The World Bank is an international organization and is immune from the effects of any decree by a United States court. *Imagnu v. Wodajo*, 85 Md.App. 208, 582 A.2d 590, 594 (1990). The wife asserts that this fact mandates that the trial court determine the present value of the expected future pension plan benefits.[2]

Because such a determination involves certain assumptions as to future events, it is, to some degree, necessarily speculative. *Id.* 582 A.2d at 592. Although it is possible to assign a present value to future payments and it may be appropriate to do so in some circumstances, *Imagnu* does not, in our judgment, mandate the use of present value calculations with World Bank pension plans. The decision simply suggests that present value is one of several possible ways in which a trial court could resolve the matter upon a divorce and under the circumstances before the Maryland court, the employee contribution plus interest method was inappropriate. *Id.* 582 A.2d at 594–95.

The parties do not dispute that the agreement controls the pension division. The articles of the agreement contain no provision for contingent rights, showing no intent to require a present distribution of such rights. The agreement merely states that each party owns an undivided one-half interest in acquired property. Moreover, the agreement's requirement of an exact calculation bears upon the options to be considered by the trial court. The court in *Imagnu* "need[ed] only [to] achieve equity between the parties, not necessarily an equal distribution." *Id.* 582 A.2d at 595 n. 4. The "when, as, and if" method is appropriate to divide the pensions accurately under the agreement because it "nullifies any risk of error in the evaluation." *Id.* 582 A.2d at 592. By contrast, the present value method purportedly favored by *Imagnu* is not likely to provide a precisely equal division because the value is affected by factors which are "impossible to predict with any degree of certainty." *Id.*

Finally, although the husband may leave the United States after retirement,[3] both parties retain their Belgian citizenship and own considerable other assets besides their pension rights.[4] The rights of the parties in

---

2. The appellant also argues that the case must be remanded to the trial court for failing to address expressly the issue of unenforceability. However, in the motion for reconsideration one of the principal arguments of the wife was based upon the unenforceability argument that she now makes. We think that the trial court in refusing to grant the motion for reconsideration effectively ruled against the wife's argument.

3. Appellee holds a G–4 visa which permits him to reside in the United States while employed by the World Bank.

4. In evaluating the parties' financial status prior to the property division, the trial court noted that "[w]hat is determinable on this record is that both parties have substantial assets, which will leave neither of them wanting," and further that

the pensions flow ultimately from the premarital agreement, enforceable by any court, and not from a property division percentage decreed by the trial court. There is no requirement that a trial court order a lump sum present value payment whenever a decision affects future rights, any more than with respect to child support or alimony, which may also present enforcement problems. In sum, we conclude that the trial court did not abuse its discretion by applying the "when, as, and if" method to divide the pensions in the circumstances here.

## II.

■ The second issue raised on appeal is the trial court's treatment of the marital home in the District of Columbia. The wife argues that the trial court correctly found that the property was subject to division under D.C.Code § 16–910(b) (1989), rather than under the premarital agreement, but that the trial court erred in the application of the statutory factors when it granted the wife twenty-five percent instead of a larger interest in the home.[5] The husband in his cross-appeal asserts that the trial court erred in not finding the home to be separate property of the husband within the terms of the premarital agreement and thus entirely owned by him. We are not persuaded by either of these arguments.

With respect to the wife's assertions that the trial court improperly weighed the factors of section 16–910(b), we have repeatedly held that the trial court has broad discretion over the division of marital property under that section.[6] *Powell v. Powell,* 457 A.2d 391, 393 (D.C.1983). As required, the trial court expressly considered the principal factors relevant here as set forth in section 16–910(b). *Id.* It was undisputed that at least a major portion of the funds which were used to purchase the marital home derived from the separate property of the husband.[7] In dividing the marital home, the court took into account the wife's nonfinancial contributions to the farm which was sold to purchase the disputed property. The court considered that some of the wife's separate funds were used for marital expenses, and also considered the parties' health, occupations, ages, and "positive and negative" nonfinancial contributions to the marriage. On the record before us, we can find no abuse of discretion in the trial court's application of the § 16–910(b) factors.

■ The husband in his cross-appeal claims that the home was his separate property under the premarital agreement and hence not subject to division under section

---

"this court has no doubt that even a $90,000 difference in the estimation of plaintiff's assets is negligible."

5. While appellant's brief on appeal asserts a right to forty percent of the marital home, in her proposed findings of fact and conclusions of law before the trial court, she requested thirty-five percent of the home.

6. The wife claims that in addition to the failure to provide her with thirty-five percent of the marital home, the trial court erred in failing to order a sale of the house as part of the property division. We are aware of no authority that requires a trial court to order a partition sale or a sale in kind or the like as part of a judgment of divorce. Section 16–910 simply provides that the trial court shall divide the property between the spouses. Whether the spouses as co-owners choose to sell the property or to effectuate a buyout by one spouse or to otherwise bring a partition action may properly be left for subsequent determination within the discretion of the trial court. We see nothing to the contrary in *Carter v. Carter,* 516 A.2d 917 (D.C.1986). Likewise we disagree with appellant's contention that

the order is ambiguous in providing both a percentage split and a total dollar value for the home. In our judgment, the two orders of the trial court, read in context, provide for a percentage division of ownership. We note also that neither party asked for clarification in the petition for rehearing.

7. The wife argued that even though the source of the funds was the husband's separate property derived from the sale of a farm in Maryland, the purchase of that farm involved a loan of $125,000 which was co-signed by the husband and the wife and that this fact affected the nature of the husband's separate property even though the loan was repaid entirely out of the husband's separate property. That fact alone is not determinative for the division of property, *Yeldell v. Yeldell,* 551 A.2d 832, 835 (D.C.1988) (mere signing of a mortgage does not transmute separate property into marital property), although when considered with other relevant factors it may have some bearing on the ultimate determination of the nature of the disputed property.

16–910(b). He bases this argument on the first and second articles of the premarital agreement which he reads as providing that separate property must remain separate although titled in both names. We find great difficulty in so interpreting the agreement.[8] Article one does not state whether property titled in both names, such as the parties' marital home, may be separate property. It merely provides that "[e]ach spouse shall retain as his and her sole property all presently owned property and all property acquired in the future by (donation) or inheritance." Article two sheds no light on the issue in its provision that title is irrelevant for acquired property, remaining silent or at least highly ambiguous regarding separate property. It states that acquired property "shall include ... all property acquired during the marriage by the spouses in their individual names or in both names other than for the utilization or re-utilization of personal non-marital assets whether lost o[r] recovered." Thus, the first and second articles are at best ambiguous about the parties' intent with respect to separate property which becomes jointly titled and in which, moreover, the individual owner appears to intend to give the other spouse some interest, as the trial court found here.[9]

■ The law of the relevant jurisdiction will then provide some insight as to the proper treatment of disputed property. We are not cited to any provisions of the law of Belgium governing the interpretation and the scope of the agreement or the ownership of property by married couples. Where foreign law is at issue, but not proven or even argued by either party, the law of the District of Columbia shall apply. *Gilper v. Kiamesha Concord, Inc.*, 302 A.2d 740, 745 n. 5 (D.C. 1973); *see Adamsen v. Adamsen*, 151 Conn. 172, 195 A.2d 418, 421 (1963) (Norwegian law on modification of custody orders presumed same as Connecticut law absent evidence to the contrary); *Pernikoff v. Kennedy*, 219

F.Supp. 854, 860 (D.D.C.1963) (foreign law is a question of fact).

Here, the marital home was placed into tenancy by the entirety ownership form. Under our decision in *Turpin v. Turpin*, 403 A.2d 1144, 1146 (D.C.1979), putting even separate property in joint names "for whatever reason" subjects it to division under section 16–910(b). Furthermore, all property, even though separately titled, is treated as acquired during the marriage unless the party who claims separate ownership meets the burden of establishing the separate status of the disputed property. *Jordan v. Jordan*, 616 A.2d 1238, 1239 (D.C.1992). Considering these principles in light of the record here, we conclude that the husband failed to establish that the home should be treated as separate property under the premarital agreement and hence owned entirely by him alone.[10]

· *Affirmed.*

---

8. As did the trial court, we address an English translation of the agreement submitted as an exhibit by the husband without objection by the wife.

9. The trial court found that the property was titled in both names as a condition to the appellant wife's permission to sell the parties' jointly titled former residence.

10. No claim is made by either party that the house is otherwise subject to the premarital agreement.