*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 15-FM-1418

EDMUND C. FLEET, APPELLANT,

v.

ERICKA E. FLEET, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DRB-3615-13)

(Hon. Robert R. Rigsby, Trial Judge)

(Submitted February 7, 2017                    Decided April 20, 2017)

*Jennifer Anukem* for appellant.

*Daniel S. Shaivitz* for appellee.

Before THOMPSON, BECKWITH, and MCLEESE, *Associate Judges*.

BECKWITH, *Associate Judge*: Appellant Edmund Fleet appeals from a judgment of absolute divorce entered by the trial court following a five-day bench trial. Mr. Fleet challenges the court's distribution of a portion of the marital home and Mr. Fleet's retirement account to his ex-wife, appellee Ericka Fleet. Mr. Fleet contends that in dividing the marital home, the court applied an improper

presumption of equal—rather than equitable—distribution, resulting in an erroneous allocation of fifty percent of the equity in the home (after deducting Mr. Fleet's $30,000 down payment and costs relating to the sale of the home) to Ms. Fleet. Mr. Fleet also claims that the court failed to consider certain facts bearing on the equitable distribution of the home and failed to make a finding as to the value of the home. Regarding his retirement account, Mr. Fleet claims that the trial court erred in awarding a portion of the account to Ms. Fleet, even though the account decreased in value over the course of the marriage. We agree with Mr. Fleet that the trial court's factual findings are inadequate to support its distribution of the marital home and the retirement account, and we reverse and remand for further consideration.

## I. Background

Ericka and Edmund Fleet were married in October 2010. They had one child, born in January 2013. In August 2013, the parties began "liv[ing] separate and apart, without . . . cohabitation,"[1] and Ms. Fleet subsequently filed a complaint for legal separation and custody. Mr. Fleet filed a counterclaim for absolute

---

[1] The parties both remained in the marital home until March 2014, sleeping in different rooms.

divorce and custody. After two years of proceedings, including an appeal to this court[2] and a five-day bench trial, the trial court entered a judgment of absolute divorce. The court's written judgment resolved a number of disputes between the parties, including custody of their child, child support, alimony, and distribution of property. Only the court's findings and conclusions relating to the marital home and to Mr. Fleet's retirement account are at issue in this appeal.

## A. The Marital Home

During most of the marriage, including a number of months after the parties were legally separated, the parties lived together—with their child and Ms. Fleet's child from an earlier marriage—in a house in Southeast Washington, D.C. Mr. Fleet had purchased the home in January 2010, nine months before the marriage, and the title was solely in Mr. Fleet's name.[3] Mr. Fleet financed the purchase with a mortgage, and he made a $30,000 down payment. Before and during the marriage, Mr. Fleet was solely responsible for the mortgage and all other expenses related to the home. Mr. Fleet testified at trial that he covered some of the

---

[2] *Fleet v. Fleet*, 137 A.3d 983 (D.C. 2016).

[3] Ms. Fleet testified at trial that she and Mr. Fleet had been "looking to purchase a property during [their] engagement period" and that she was involved in the purchase decision.

expenses associated with the home using funds—eventually totaling $50,000—that he borrowed from his mother. Ms. Fleet lost her job five months into the marriage and was still unemployed at the time of the divorce trial in 2015. According to the trial court's summary of the testimony, she contributed by "maintaining the household, caring for the minor child and paying household expenses with funds earned by [Mr. Fleet] and by [Ms. Fleet] while she [was still employed] . . . and while she collected unemployment thereafter." "[B]oth parties contributed to the cooking, cleaning, laundry, and care of the minor child during the marriage."

One week before the parties separated in August 2013, Mr. Fleet deeded the marital home to himself and Ms. Fleet, as tenants by the entirety. When asked at trial why he added Ms. Fleet's name to the title, Mr. Fleet explained that Ms. Fleet "kept pressuring [him] to do so and [that] [he] finally acquiesced . . . [i]n order to keep peace in the house." In hindsight, Mr. Fleet believed that Ms. Fleet, a former paralegal, convinced him to add her name as part of a "methodical and thought out" "exit strategy from the marriage." In her testimony, Ms. Fleet explained the decision process somewhat differently:

> We had just had the baby and I wanted to establish some stability for the baby of course and there was an incident where we had had guests over and I was in charge of paying the bills and I paid the water bill and I don't think I paid enough of the water bill. So, they shut the water off and it was embarrassing. . . . I couldn't transact

> business because my name wasn't on any of the utilities and so, with it being the water company[,] the owner of the property is responsible for the water bill. . . . You know this is my house too. I think we are going to have to change that. I am going to have to get my name on the deed . . . .

Ultimately, it was Ms. Fleet who reached out to the "title company . . . and paid them a flat fee to . . . have the documents prepared."

In the judgment of divorce, the trial court found that Mr. Fleet's act of "add[ing] [Ms. Fleet's] name to the title of the marital home[] indicat[ed] an intention that [Mr. Fleet] wanted [Ms. Fleet] to share in the ownership of the marital home." "Consequently," the court awarded Ms. Fleet "50% of the value of the mar[it]al home minus the $30,000 that [Mr. Fleet] paid for the down payment" and costs relating to the sale of the home. The court ordered the home to be sold, reasoning that "[a] sale . . . will allow Mr. Fleet to recover his original investment of $30,000, empower the parties to meet certain obligations, reduce the parties' debt, and obtain an equitable distribution of marital assets."

## B. The Retirement Account

Three months before the marriage, Mr. Fleet had $102,000 in a retirement savings account. The court found that "[t]hroughout the course of the marriage, [Mr. Fleet's] retirement savings decreased in value." Specifically, by July 2015,

Mr. Fleet had only $80,300 in the retirement account. Although Mr. Fleet testified that in 2012 he made a $50,000 withdrawal from the retirement account to pay various "expenses of the family," the trial court found it significant that "there is no documentary proof which demonstrates how the funds were used." The trial court awarded ten percent of the account to Ms. Fleet, reasoning that "[d]uring the course of the parties' separation and this litigation, [she] has been unable to save for her retirement, while Mr. Fleet has continued to contribute to his own retirement fund."

## II. Discussion

Mr. Fleet challenges the trial court's division of the marital home and his retirement account. The distribution of property in divorce is governed by D.C. Code § 16-910 (2012 Repl.). Each party is assigned "his or her sole and separate property," and all other property—the marital property—is distributed "in a manner that is equitable, just, and reasonable." *Id.* § 16-910 (a), (b). In dividing marital property, "[t]he trial court must engage in a 'conscientious weighing of all relevant factors, statutory[4] or otherwise.'" *Young-Jones v. Bell*, 905 A.2d 275, 277 (D.C. 2006) (quoting *Barnes v. Sherman*, 758 A.2d 936, 943 (D.C. 2000)).

---

4 *See* D.C. Code § 16-910 (b).

"[T]he trial court has considerable discretion and broad authority" in making this determination. *Id.* (quoting *Barnes*, 758 A.2d at 939). This court will not reverse if "the trial court's findings of fact, conclusions of law and judgment, taken together . . . present an integrated, internally consistent and readily understood whole." *Id.* (quoting *Barnes*, 758 A.2d at 939) (omission in original). This court will reverse, however, where "inadequate findings on material issues preclude[] meaningful appellate review." *Burwell v. Burwell*, 700 A.2d 219, 224 (D.C. 1997).

### A. Distribution of the Marital Home

Mr. Fleet first attacks the trial court's decision to award Ms. Fleet half of the equity in the marital home remaining after deducting his $30,000 down payment and costs relating to the sale of the home. He concedes that because he added Ms. Fleet's name to the title, the home is marital property, subject to equitable distribution under D.C. Code § 16-910 (b). *See De Liedekerke v. De Liedekerke*, 635 A.2d 339, 343 (D.C. 1993) ("[P]utting even separate property in joint names 'for whatever reason' subjects it to division under [the] section [governing marital property]." (quoting *Turpin v. Turpin*, 403 A.2d 1144, 1146 (D.C. 1979))). But Mr. Fleet challenges the application of § 16-910 (b) under the facts of this case, on various grounds.

First, Mr. Fleet contends that the trial court erroneously "made legal title the dispositive factor when granting [Ms. Fleet] an equal interest in the marital home," or that the court at least employed an improper presumption of equal distribution. It is well established that the District's "divorce law contains no presumption in favor of an equal distribution of property; instead, it requires the court to divide the marital property 'in a manner that is equitable, just and reasonable,' after considering 'all relevant factors.'" *Burwell*, 700 A.2d at 223 (quoting D.C. Code § 16-910 (b) (1997 Repl.)); *see also Sudderth v. Sudderth*, 984 A.2d 1262, 1267 (D.C. 2009); *Barnes*, 758 A.2d at 940 n.7. Moreover, "[t]he mere listing of the parties as joint tenants [is] not dispositive on the issue of legal entitlement following a divorce." *Benvenuto v. Benvenuto*, 389 A.2d 795, 798 (D.C. 1978). Here, in the judgment of divorce, the trial court, immediately after noting that Mr. Fleet added Ms. Fleet's name to the title and concluding that this "indicat[ed] . . . that [Mr. Fleet] wanted [Ms. Fleet] to share in the ownership of the marital home,"[5]

---

[5] The finding that Mr. Fleet "wanted [Ms. Fleet] to share in the ownership of the marital home" appears to contradict both parties' testimony about their motivations for adding Ms. Fleet to the title and may be clearly erroneous. *See Abulqasim v. Mahmoud*, 49 A.3d 828, 834 (D.C. 2012) ("A finding is clearly erroneous when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (internal quotation marks and citation omitted)). Even putting aside the testimony of both parties contradicting the court's finding, Mr. Fleet's act of deeding the home to

(continued…)

ruled that "[c]onsequently, [Ms. Fleet] will be entitled to 50% of the value of the mar[it]al home minus the $30,000 . . . down payment." This strongly suggests that the court relied on title as a dispositive factor in awarding a fifty-percent share to Ms. Fleet.

It is true that the court also noted that Mr. Fleet purchased the home and made all of the mortgage payments and that Ms. Fleet (as well as Mr. Fleet) took care of household tasks and child care. So it is possible that the court, by weighing these facts, decided that equal division of the equity in the house (less Mr. Fleet's down payment and the sales costs) was the equitable way to divide the property. But the spare reasoning in the judgment of divorce precludes us from concluding

---

(…continued)

both parties as tenants by the entirety did not necessarily evince a desire to gift a share of the property to Ms. Fleet. *See Chamberlain v. Chamberlain*, 287 A.2d 530, 532 (D.C. 1972) ("[I]t cannot be held that the wife by . . . agreeing that title be taken in both names made a gift to her husband. . . . [Such an act is more consistent with a] desire[] to assure her husband's right of survivorship during the continuance of the marriage than [a desire to] make an absolute disposition to him of a one-half interest in the home."). Further, even if the act of deeding the property in this case constituted an interspousal gift, this fact would not necessarily be dispositive, given D.C. § 16-910 (b)'s requirement of equitable distribution. Such a gift could have been "conditional upon the marriage lasting for a reasonable period of time," and "[w]here a spouse makes a transfer into joint tenancy expecting a long relationship, and the relationship ends soon after, it [could be] inequitable to divide gifted property equally." 2 Brett R. Turner, *Equitable Distribution of Property* § 8:6 (3d ed. 2016). On remand, the trial court should reconsider or elaborate upon this finding.

that the court did in fact weigh the facts in this way.[6] *See Foster-Gross v. Puente*, 656 A.2d 733, 737 (D.C. 1995) (explaining that "the trial court must make written findings . . . for all material issues" in order to "assur[e] that the issues . . . are resolved based upon the evidence, and not extralegal considerations"). And even assuming that the court's conclusion reflects a tacit weighing of the parties' respective contributions to the marriage, "[t]he court's equation of the [contributions of the] two sides . . . , without any subsidiary findings [in the record] to support this conclusion, makes it impossible for us to assess the correctness of the ruling." *Burwell*, 700 A.2d at 225; *see also Pimble v. Pimble*, 521 A.2d 1173, 1175 (D.C. 1987) (requiring the trial court to set forth "findings . . . sufficient to allow meaningful appellate review").

Mr. Fleet next argues that the trial court erred in failing to value the marital home before distributing it. Mr. Fleet is correct that the court's judgment of divorce does not contain a valuation of the home, notwithstanding that the court received testimony on the marital home's value and admitted into evidence

---

[6] Although the court found that Ms. Fleet "did contribute to the maintenance of the marital home, including cleaning, paying bills, and general up-keep, as well as looking after the minor child," the court also found that "both parties contributed to the cooking, cleaning, laundry, and care of the minor child." The court did not determine the parties' respective contributions.

multiple expert appraisals.[7] He is also correct that this runs afoul of D.C. Code § 16-910, which explicitly states that "in the absence of a[n] . . . agreement resolving all issues related to the property . . . , the court *shall*[] . . . *value* and distribute all" marital property (emphasis added). *See also Murphy v. Murphy*, 46 A.3d 1093, 1097 (D.C. 2012) ("Distribution of marital property necessarily requires a valuation of those assets."). On remand, the trial court should make a determination as to the value of the marital home.[8] Because it is likely that the home has already been sold, the actual sales price of the home should control, absent evidence that the home was sold in an unreasonable manner. This is

---

[7] Ms. Fleet argues that because the trial court determined that a sale of the property "will allow Mr. Fleet to recover his original investment of $30,000, empower the parties to meet certain obligations, reduce the parties' debt, and obtain an equitable distribution of marital assets," the trial court must have determined the value of the marital home, despite failing to set forth such a valuation or the court's reasoning in support of it in the judgment. According to Ms. Fleet, "[t]here is no other explanation for how the trial court could have reached th[e] conclusion" it did. Even if we overlooked the speculative nature of this argument, the trial court is still required to set forth "findings . . . sufficient to allow meaningful appellate review" of its valuation, *Pimble*, 521 A.2d at 1175, and it failed to do so. A remand is therefore required.

[8] Notwithstanding the statutory requirement, it might at first seem that a valuation is pointless where the court has chosen to divide an asset in a proportional manner (here, fifty-fifty). But unless "the court divide[s] each and every asset between the parties in exactly the same ratio," the overall division of property will depend on the values of the individual assets. 2 Brett R. Turner, *Equitable Distribution of Property* § 7:1 (3d ed. 2016).

consistent with the principle that in distributing assets, the trial court should consider the current asset values. *See Murphy*, 46 A.3d at 1097. If the house has been sold, the most current relevant value is the value at the time of sale.

Mr. Fleet's final claim of error concerning the division of the marital home is that the trial court purportedly failed to consider several factors bearing on the home's equitable distribution: "(1) Mr. Fleet's contributions to the acquisition and preservation of the home; (2) the loaned monies [from Mr. Fleet's mother] which made the aforementioned possible; [and] (3) the circumstances that motivated the parties to retitle the property."

We agree that the trial court's findings concerning the first of these factors are not sufficiently detailed to permit appellate review. Although the court mentioned Mr. Fleet's monetary contributions and both parties' nonmonetary contributions to the upkeep of the home and care of their child, the court did not engage in a comparative valuation of the parties' respective contributions. And there is merit to Mr. Fleet's specific contention that the court should have explicitly considered "the period of time between the parties' separation and the date of distribution when [Mr. Fleet] was single handedly making mortgage

payments, and thus single handedly contributing to the equity of the home."[9] Mr. Fleet's continuing contribution to the equity of the home after separation was undoubtedly relevant and something the court should have addressed. *See* D.C. Code § 16-910 (b)(10) (requiring the court to consider "each party's contribution to the acquisition, preservation, appreciation, dissipation, or depreciation in value of the assets"). Of course, other factors may weigh against giving Mr. Fleet credit for his post-separation contributions to the equity of the home. *See, e.g.*, *Beals v. Beals*, 303 P.3d 453, 464 (Alaska 2013) ("[T]he superior court should consider whether any such credits should be offset by the value of the benefit of the spouse's post-separation occupancy of the house." (internal quotation marks, citation, and brackets omitted)); *von Raab v. von Raab*, 494 S.E.2d 156, 161 (Va. Ct. App. 1997). But the trial court must set forth its reasoning in a manner that allows this court to review it.

We also agree that the testimony that Mr. Fleet's mother lent him approximately $50,000 for expenses related to the home was material and should

---

[9] The court did note in the judgment of divorce that Mr. Fleet "continue[d] to be solely responsible for the mortgage" after separation, but the judgment does not indicate that the court attached any weight to that fact or made a reasoned decision not to attach weight to that fact.

have been explicitly addressed by the trial court.[10] The court mentioned that Mr. Fleet owed money to his mother in considering whether to grant alimony to Ms. Fleet, but this brief discussion did not grapple with the potential bearing of Mr. Fleet's debt to his mother on the division of the marital home. *See* D.C. Code § 16-910 (b) (requiring the equitable distribution of all "property and *debt* accumulated during the marriage" (emphasis added)); *Zandford v. Wiens*, 549 A.2d 13, 14 (Md. 1988) ("[W]hen a court is required to determine the value of marital property, it must consider as marital debt an outstanding loan traceable to the acquisition of the property, even though the loan is not a lien on the property."). We recognize that it is the trial court's job—not this court's—to assess the credibility of the testimony about the debt and make factual findings concerning how any money lent by Mr. Fleet's mother was used. But the trial court's judgment must set forth those findings.

There is also some merit to Mr. Fleet's argument that "the trial court failed to consider the timeline in which Mrs. Fleet's name was added to the deed." The

---

[10] We disagree, however, with Mr. Fleet's argument that the trial court failed to consider his debt to the Internal Revenue Service. As the court said in its written order, "Mr. Fleet's mistaken belief regarding his allowable deductions was the sole cause of [his] tax liabilities and, therefore, Mr. Fleet shall remain solely liable for these tax liabilities." Mr. Fleet has not demonstrated that the trial court clearly erred in reaching this conclusion.

judgment of divorce implicitly rejects Mr. Fleet's position that Ms. Fleet pressured him into adding her name to the title as part of her "exit strategy from the marriage." And on the record before us, such a conclusion is not clearly erroneous. But, as indicated in note 5, *supra*, the trial court did not sufficiently explain its finding that Mr. Fleet "wanted [Ms. Fleet] to share in the ownership of the marital home," which seems to contradict both parties' stated motivations for adding Ms. Fleet's name to the title. Further factual findings concerning the circumstances of the addition of Ms. Fleet's name to the title are required.

### B. Distribution of the Retirement Account

Mr. Fleet also disputes the trial court's decision to award a portion of his retirement account to Ms. Fleet. Specifically, he argues that the judgment of divorce did not set forth the trial court's reasoning for classifying the funds in the account as a marital asset and that much of the account should have been classified as separate property. He relies on the undisputed evidence that the retirement account existed before the marriage and depreciated in value, due to a $50,000 withdrawal, during the course of the marriage. Mr. Fleet also argues that the court's stated reason for assigning Ms. Fleet a share of the retirement account— that "[d]uring the course of the parties' separation and th[e] litigation," Mr. Fleet, but not Ms. Fleet, had been able to save for her retirement—was improper.

We agree that the trial court erred in failing to set forth its rationale for classifying the retirement account—or some unidentified portion of it—as marital property. As a general matter, retirement savings and benefits, "to the extent acquired during the marriage, are property subject to distribution under § 16-910 (b)." *Herron v. Johnson*, 714 A.2d 783, 784 (D.C. 1998). But we have never held that preexisting retirement funds brought into the marriage should be classified as marital property. *Cf. Yeldell v. Yeldell*, 551 A.2d 832, 835 (D.C. 1988) (recognizing "the clear line drawn by the legislature between property acquired prior to the marriage (section 16-910 (a)) and property accumulated during the marriage (section 16-910 (b))"). Here, Mr. Fleet accumulated $102,000 in his retirement account before the marriage. Absent circumstances that would transform the $102,000 into marital property[11]—and the trial court did not identify any such circumstances in the judgment of divorce—those funds were separate property.

---

[11] *See, e.g.*, *Araya v. Keleta*, 65 A.3d 40, 56 (D.C. 2013) ("[W]here a spouse's separate property has been combined or blended with marital property in such a way that (1) the two items of property came to be used as one property and (2) one or both properties would be destroyed or damaged or left with a gaping deficiency or defect if the properties were separated, the *Darling* rule permits the trial court to treat the separate property as 'transformed' and the combined or blended property as marital property that is subject to equitable distribution under § 16–910 (b)." (citing *Darling v. Darling*, 444 A.2d 20 (D.C. 1982)) (footnote omitted)); *De Liedekerke*, 635 A.2d at 342 n.7.

It was not necessarily error, however, for the trial court to classify funds derived from post-separation, pre-divorce contributions (along with any funds derived from pre-separation contributions[12]) as marital property. *Cf. Cerovic v. Stojkov*, 134 A.3d 766, 784–86 (D.C. 2016) (explaining that "a literal reading [of D.C. Code § 16-910] would permit inclusion of attorney's fees incurred in the course of divorce proceedings as debt to be distributed between the parties, because the parties were still legally married at the time the debt for attorney's fees was incurred, and in that sense was 'accumulated during the marriage,'" but relying on another statutory section to find that attorney's fees are excluded from the marital debt). Thus, there was nothing improper about the court noting that "[d]uring the course of the parties' separation and th[e] litigation," Mr. Fleet, but not Ms. Fleet, had been able to contribute to a retirement account. The court did err, though, in failing to indicate how much of the $80,300 in the account at the end of the marriage was the result of contributions during the marriage (both before and after the parties' separation), in failing to explain what percentage of that portion of the account should be awarded to Ms. Fleet, and in failing to explain

[12] The trial court did not make any findings as to whether Mr. Fleet made contributions to his retirement account during the marriage before the parties' separation. There is evidence in the record—namely, account statements and Mr. Fleet's testimony—indicating that Mr. Fleet stopped making contributions about six months into the marriage, after Ms. Fleet lost her job.

in sufficient detail what factors would make such an award equitable under the circumstances.[13]

## III. Conclusion

For the foregoing reasons, we reverse the trial court's rulings and remand for further factual findings and conclusions of law.[14] On remand, the trial court should

---

[13] The trial court did not abuse its discretion, however, in refusing to credit Mr. Fleet's explanation that the funds withdrawn from his retirement account in 2012 were used to pay family expenses. The trial court accurately noted that "there is no documentary proof which demonstrates how the funds were used." And Ms. Fleet testified that Mr. Fleet withdrew the funds to pay debts existing from before the marriage.

[14] Ms. Fleet argues that a remand is not required because "[t]he trial court's judgment, taken together, presented 'an integrated, internally consistent and readily understood whole'" (quoting *Bowser v. Bowser*, 515 A.2d 1128, 1130 (D.C. 1986)). Ms. Fleet asserts that the trial court decided the issues of alimony and child support in favor of Mr. Fleet, improperly imputed an income of $66,345 to her despite the fact that "[t]he record lacked any evidence that . . . [she] could secure a job and achieve income in the reasonabl[y] foreseeable future," failed to give her a share of several rental properties owned by Mr. Fleet, and failed to award attorney's fees and costs to her. Thus, Ms. Fleet argues, "[t]he disposition of the Marital Home and the [retirement] account was an equitable way to balance the equities of the divorce, especially in light of the trial court's numerous denials of claims made by Ms. Fleet." But the judgment of divorce does not show that the trial court endeavored to balance the equities in this way. For example, although we have held in the past that "it is within the trial court's discretion to award marital property in lieu of alimony," *Sudderth*, 984 A.2d at 1266, there is no indication that the trial court in the present case compensated for its denial of alimony to Ms. Fleet by awarding her a half share in the equity of the marital home. Further, to the extent that Ms. Fleet contends that the trial court erred in

(continued…)

reconsider its award of a fifty-percent stake of the equity in the marital home to Ms. Fleet and fully set forth the reasons supporting its award. While equal division of the home might be equitable under the circumstances, the court's judgment should make clear that the court is not relying on a presumption of equal division. Further, the trial court should make factual findings about the value of the home and consider this value in deciding how to equitably distribute the equity in the home. The court should set forth findings and conclusions concerning Mr. Fleet's mother's loan to Mr. Fleet and its bearing on the equitable division of the home. Concerning the retirement account, the court should make findings as to what portion of the funds in the account is properly considered marital property and make findings as to what percentage of that portion should be awarded to Ms. Fleet.

*So ordered.*

---

(…continued)
resolving some issues in favor of Mr. Fleet, her arguments are completely perfunctory and therefore waived. *See Derosiers v. District of Columbia*, 19 A.3d 796, 797 n.1 (D.C. 2011).